E. Craig Daue, Esq.
John M. Fitzpatrick, Esq.
BUXBAUM, DAUE & FITZPATRICK, PLLC
228 West Main, Suite A
P.O. Box 8209
Missoula, MT 59807
Telephone:  (406) 327-8677
Fax No.:  (406) 829-9840

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| BETTY KAY HENDERSON-MATTHEWS, TIMOTHY MATTHEWS, CHANCE MATTHEWS, BRANDON MATTHEWS, and TY MATTHEWS,<br><br>    Plaintiffs,<br><br>  -vs-<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Cause No.  CV07-155-M-DWM<br><br>COMPLAINT |

Plaintiffs, through their attorneys, allege:

1. At all times pertinent to this case, Plaintiffs have been citizens of the State of Montana.

2. This Court has jurisdiction over this case pursuant to the Federal Tort Claims Act, 28 U.S.C. 2671, *et seq.*, in that the claim arises from the Government's conduct in providing health care services at Blackfeet Community Hospital (BCH) in Browning, Montana. BCH is an Indian Health Services (IHS)-funded facility operated by the United States. The negligent acts and omissions that are the subject of this action were committed by the Government's agents and employees while acting within the course and scope of their employment. This Court has exclusive jurisdiction over tort claims brought against the United States pursuant to 28 U.S.C. § 1346(b).

3. The Plaintiffs' claims were filed in writing with the Department of Health and Human Services on May 29, 2007. More than six months have elapsed since the claims were filed, and the United States has not accepted or denied the claims. Accordingly, Plaintiffs have appropriately exhausted their administrative remedies.

4. The acts and omissions giving rise to this claim occurred in Glacier County, Montana, which is within this judicial district. Venue is proper in this Court under 28 U.S.C. §§ 1391(e) and 1402(b). Venue also is proper in this division under this Court's Local Rule 1.11 and § 25-2-122, Mont. Code Ann., because Defendant United States resides in Missoula County and each of the other counties within the Missoula Division of the United States District Court for the District of Montana.

5. On February 10, 1997, Betty Matthews received an air contrast barium enema at BCH. The x-ray films of the barium enema were interpreted by Robert Hedlund, M.D. Dr.

Hedlund's report of those films states: "There is a single 8 mm sessile polyp present in the mid sigmoid region."

6. Although plans were made by doctors employed by the Defendant to remove the polyp through a flexible sigmoidoscope, this was never done.

7. Betty Matthews has remained a patient of BCH from the time the polyp was discovered to the present. She was seen dozens of times at BCH between 1997 and 2006, including at least one time each year.

8. On August 23, 2006, Betty was scheduled to have an endoscopic examination of her upper GI tract performed by Dr. Joseph Liechty, a specialist in gastroenterology. On that day, Dr. Liechty reviewed BCH's records of Betty's care and noticed that the polyp had been discovered nine years earlier, but had never been further investigated. Dr. Liechty cancelled the upper GI examination and ordered that Betty undergo a colonoscopy.

9. Dr. Liechty performed a colonoscopy on September 13, 2006. He removed a 1.6 cm polyp from Betty's sigmoid colon. The polyp Dr. Liechty removed was in the same location where the polyp had been identified in the 1997 barium enema report. There were no other abnormalities in Betty's colon. Biopsy confirmed that the polyp was invasive adenocarcinoma.

10. On October 6, 2006, Dr. Glenn Winslow removed Betty's sigmoid colon and a single lymph node. Examination of the lymph node showed that cancer was present in the node. Betty's cancer had pathologic staging of pT1, N1, MX. Dr. Thomas Warr, a specialist

in oncology, determined that Betty had Stage III colon cancer. Stage III colon cancer has a long term survival rate of approximately 40%.

11. When the 8 mm polyp was discovered in Betty's colon in 1997, it was highly probable that it was a pre-cancerous growth. Removal at that time would have prevented the polyp from becoming cancerous. If the polyp was already cancerous in 1997, it was almost certainly in a very early stage with a high probability of complete cure if it had been immediately removed.

12. The standard of care from 1997 to the present required that a colon polyp be biopsied or completely removed and submitted for pathologic examination. BCH had a continuous duty to biopsy or remove Betty's sigmoid polyp from 1997 through September 13, 2006. Failing to do so was negligent.

13. BCH's negligence allowed Betty's polyp to progress from a pre-cancerous growth to Stage III colon cancer, and reduced her probability of survival from approximately 100% to approximately 40%.

14. Betty married Timothy William Matthews on December 2, 1983. They have three children:

        Chance William Matthews    DOB 11/10/83 (age 24)

        Brandon Carl Matthews    DOB 12/18/89 (age 17)

        Ty Augustus Matthews    DOB 4/12/91   (age 16).

15. Betty's cancer and the illness caused by her chemotherapy have deprived Tim, Chance, Brandon, and Ty Matthews of her love, affection, companionship and services.

16. In the event Betty dies from her cancer before the claims at issue in this cause of action are resolved, her death will give rise to wrongful death and survival claims. In that event, a motion will be made to amend this Complaint.

WHEREFORE, Plaintiffs seek judgment against the Defendant as follows:

1. For a judgment in such amounts as shall be proven at trial;

2. For costs of this action;

3. For such other relief as the Court deems just.

Dated this 18th day of December, 2007.

/s/ E. Craig Daue
E. Craig Daue
BUXBAUM, DAUE & FITZPATRICK, PLLC
*Attorneys for Plaintiff*